RECEIVED
IN LAKE CHARLES, LA

APR 3 0 2009

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### LAKE CHARLES DIVISION

| | | |
|---|---|---|
| UNITED NATIONAL INSURANCE COMPANY | : | DOCKET NO. 2:08 CV 638 |
| VS. | : | JUDGE MINALDI |
| DEXTER HONORE CONSTRUCTION COMPANY, LLC; FLUOR CORPORATION; AND FLUOR ENTERPRISES, INC. | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the Court is a motion for partial summary judgment, filed by defendants and counterclaim plaintiffs Fluor Corporation and Fluor Enterprises, Inc. (collectively hereinafter "Fluor") [doc. 14]. Plaintiff and counterclaim defendant United National Insurance Company (hereinafter "United National") filed an opposition [doc. 17]. Fluor filed a reply [doc. 25].

Before the Court is also a motion for summary judgment, filed by United National [doc. 27]. Defendant Dexter Honore Construction Company, LLC (hereinafter "Honore") filed an opposition [doc. 33]. Fluor then filed an opposition [doc. 40]. United National filed a Reply to Honore's opposition [doc. 43]. United National also filed a Reply to Fluor's opposition [doc. 48]. On March 14, 2009, Fluor filed a sur-reply [doc. 54], and therefore this matter is ready for disposition.

Fluor seeks a partial summary judgment ruling that United National is obligated to defend Fluor in the lawsuit *Grand Acadian v. Fluor*, 07-cv-295 (hereinafter "*Grand Acadian* Lawsuit"), which is also filed in this Court. United National seeks a summary judgment ruling that it owes no duty to defend and indemnify Fluor. Because the two summary judgment motions involve the same

1

law and facts, this Court shall address both motions in this Ruling.

## FACTS & PROCEDURAL HISTORY

### A.) *Grand Acadian* Lawsuit

Grand Acadian began preliminary development of an RV resort in Sulphur, Louisiana in 2004 and 2005.[1] When hurricanes Katrina and Rita struck Louisiana, rather than completing the RV resort, Grand Acadian leased half of its property to the Federal Emergency Management Agency (hereinafter "FEMA") for an emergency housing trailer park.[2] FEMA contracted with Fluor to design and construct the FEMA trailer park.[3] Fluor contracted with Honore to assist with construction,[4] who contracted with Group Contractors, LLC (hereinafter "Group") to assist.[5]

In its original, first and second supplemental and amending complaints, Grand Acadian claims that Fluor, Honore and/or Group destroyed the underlying clay base of the soil and essentially destroyed the property's usefulness for commercial development.[6] On January 30, 2006, approximately three weeks after Fluor, Honore, and/or Group work crews began work, FEMA halted

---

[1] The Magistrate's Report and Recommendation in *Grand Acadian v. Fluor*, 07-cv-295 clearly articulates the pertinent facts underlying this lawsuit. Report and Recommendation, at 1 (Nov. 7, 2007) [doc. 44].

[2] *Id.*

[3] *Id.*

[4] Fluor and Honore entered into a contract entitled Blanket Ordering Agreement (hereinafter "BOA"), where Honore agreed to furnish labor and materials. Def.'s Ex. 3 [doc. 14].

[5] Honore and Group entered into the Group Subcontract (hereinafter "Subcontract") in which Group became one of Honore's subcontractors. *Grand Acadian v. Fluor*, 07-cv-295, Fluor's Ex. B-2 [doc. 144].

[6] *Grand Acadian v. Fluor*, 07-cv-295, Compls. [docs. 1, 108, 118].

2

major work on the site.[7] On February 15, 2006, FEMA ordered Group to cease construction on the

Grand Acadian site.[8]

Grand Acadian's first supplemental and amending complaint alleges that:

19. Unfortunately, Fluor, Honore and/or Group failed to follow the engineering plans and failed to exercise reasonable care in the performance of the work.

20. Fluor failed to retain qualified management, oversight, quality assurance, subcontractors and other qualified persons.

21. Fluor, Honore and/or Group failed to timely perform soil testing, failed to provide for adequate drainage, failed to dig drainage ditches or retention ponds on the site prior to employing heavy machinery on the raw land. After the site became wet due to rain, Fluor, Honore and/or Group continued to operate heavy machinery on the site. Fluor, Honore and/or Group tracked machinery back and forth across the undrained site, mixing topsoil, surface debris, mud, clay, and other material. This unstable surface waste cannot be built upon. Furthermore, much of the unstable surface waste has eroded away. The unstable surface waste that remains must be removed and replaced with suitable soil before any development of the FEMA-West-Half can occur.

22. Fluor, Honore and/or Group effectively lowered the base otherwise suitable for construction.

27. In the fall of 2005, while Grand Acadian was negotiating with FEMA and Fluor over the FEMA-West-Half, Grand Acadian began developing the Grand-East-Half into a premium RV Park. The re-engineered plans for the Grand-East-Half were completed on November 17, 2005. The dirt work commenced on or about December 1, 2005 and was substantially complete by January 10, 2006. Unfortunately, Fluor, Honore and/or Group's destruction of the other side, the FEMA-West-Half, effectively destroyed Grand Acadian's ability to develop its Grand-East-Half. As a result, the Grand-East-Half is substantially in the same condition today as it was on January 20, 2006.

30. As a result of Fluor, Honore and/or Group's wrongful conduct, Grand

[7] Id.

[8] Id.

3

Acadian incurred and will incur substantial damages including but not limited to the following:

a.) The costs of repairing and restoring the FEMA-West-Half to the condition it was in before Fluor, Honore and/or Group damaged it, which probably exceeds $6,000,000;

b) Incidental damages done to the Grand-East-Half;

c) The lost infrastructure and improvements on the FEMA-West-Half which were depicted on the various plans and specifications, which probably exceeds $8,000,000;

d) The effective destruction of the premium RV Park that was being developed on the Grand-East-Half.

e) The loss of past and future income on the entire 60 acre tract;

f) The potential liability associated with the sediment and silt on adjacent wetlands and waterways; and

g) Other damages as may be established at trial.

33. *Tort:* Fluor, Honore and/or Group's wrongful conduct constitutes negligence and fault. Consequently, Fluor, Honore and/or Group are liable to Grand Acadian under La. Civ. Code art. 2315 for its resulting damages.[9]

B.) Procedural History

On March 5, 2008, Fluor sent a demand letter to United National asking that United National

pay Fluor's defense costs in *Grand Acadian v. Fluor*, 07-cv-295, and to indemnify Fluor for any

liability.[10] On May 13, 2008, United National responded by filing a declaratory judgment action

asking this court to: "adjudicate and declare that the Defendants have no right to coverage under

United National Policy L7109938, thereby entitling United National to a declaration that it owes no

duty to defend or indemnify [Honore] or Fluor in the underlying" lawsuit.[11]

---

[9] *Grand Acadian v. Fluor*, 07-cv-295, First Supplemental and Amending Complaint [doc. 108].

[10] Def.'s Ex. 2 (March 5, 2008 Demand Letter).

[11] Compl. [doc. 1].

4

On June 26, 2008, Fluor filed its answer and counterclaim seeking:

> 1. That United National Insurance Company be required to pay for the defense of Fluor in the civil action brought by Grand Acadian, Inc., including (i) reimbursing Fluor for the costs of defending the Grand Acadian lawsuit, (ii) together with legal interest on those amounts from the dates on which they were incurred by Fluor; and

> 2. That in the event that Fluor be ordered to pay damages to Grand Acadian in the Grand Acadian Litigation, that United National Insurance Company be found liable to Fluor for indemnity and commanding United National Insurance Company to pay to Fluor all of any amounts that Fluor may be ordered to pay Grand Acadian, Inc.;

> 3. Ordering United to pay to Fluor the statutory penalties, costs, and attorneys fees set forth in La. R.S. 22:658 and La. R.S. 22:1220.

> 4. Ordering United to pay to Fluor all attorney's fees and costs incurred to defend the declaratory action brought by United and incurred in the prosecution of this counterclaim.[12]

## C.) The BOA

On January 4, 2006, Fluor entered into the BOA with Honore, whereby Honore agreed to furnish labor and materials for the construction.[13] Honore also agreed to provide insurance for and indemnify Fluor for all claims arising from Honore's work.[14] Honore further agreed to indemnify Fluor for "damage to or loss of property...arising directly or indirectly out of this Contract or out of any acts or omissions of Contractor or its subcontractors."[15] Fluor and Honore are the only two

[12] Answer [doc. 12].

[13] Def.'s Ex. 3 (BOA).

[14] Id.

[15] Id.

5

parties to the BOA.[16] Honore was also obligated to obtain a Commercial General Liability (hereinafter "CGL") Insurance Policy, which was to be endorsed to list "Fluor and Owner, including their respective affiliates, the financing parties and the respective officers, directors and employees of each as additional insured."[17]

### D.) United National's Insurance Policy

United National issued a CGL to Honore, policy number L7198838 (hereinafter "the Policy") for the policy period 1/5/2006 through 1/5/2007.[18] The Policy includes an endorsement titled "additional insured–owners, lessees or contractors (Form B), which expands coverage to include "Flour [sic], including their respective affiliates, directors and employees."[19] Form B provides "[w]ho is an insured is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of your ongoing operations performed for that insured."[20]

The Policy also provides that United National will defend and indemnify "for property damage for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement."[21]

---

[16] *Id.*

[17] *Id.*

[18] Def.'s Ex. 1 (Policy).

[19] *Id.*

[20] *Id.* (Form B).

[21] *Id.* § 1 ¶ 2(b).

6

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The party moving for summary judgment is initially responsible for demonstrating the reasons justifying the motion for summary judgment by identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact for trial. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the moving party's motion for summary judgment if the movant fails to meet this burden. *Id.*

If the movant satisfies this burden, however, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* (quoting *Celotex*, 477 U.S. at 323). In evaluating motions for summary judgment, the court must view all facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no genuine issue for trial, and thus a grant of summary judgment is warranted, when the record as a whole "could not lead a rational finder of fact to find for the non-moving party. . . ." *Id.*

## LAW

The scope of the duty to defend is broad. *Suire v. Lafayette City-Parish Consol. Gov't*, 907 So.2d 37, 51-52 (La. 2005). To determine whether an insurer must defend:

> A court must examine the well-pleaded allegations of the plaintiff's petition to determine whether the plaintiff's allegations "unambiguously exclude[ ]" coverage. Unless unambiguous exclusion of all of the plaintiff's claims is shown, the duty to defend arises. Thus, the duty to defend does not depend upon the outcome

7

> of the suit, as it does where the purported source of the duty is an indemnity agreement; rather, where the pleadings disclose "even a possibility of liability" under the contract, the duty is triggered.

*Id.* at 52.

Accordingly, courts employ the "eight corner" rule when determining whether an insurer has a duty to defend, examining the four corners of the petition and the four corners of the insurance policy. *Lamar Advertising Co. v. Continental Cas. Co.*, 396 F.3d 654, 660-661 (5th Cir. 2005) ("[w]hether an insurer has a duty to defend is determined solely by 'compar[ing] the allegations in the complaint against the insured with the terms of the policy' at issue-the so-called 'eight corners' rule"). If the court concludes that "there are any facts in the complaint which, if taken as true, support a claim for which coverage is not unambiguously excluded," then the insurance company has a duty to defend. *Id.* So long as there is at least a single allegation in the petition for which coverage is not excluded, a duty to defend exists. *Id.* "Assuming all the allegations of the petition to be true, if there would be both coverage under the policy and liability to the plaintiff, the insurer must defend the lawsuit regardless of its outcome." *Id.*

## ANALYSIS

### I.) United National's Motion for Summary Judgment

In its motion for summary judgment, United National argues that it has no duty to defend and indemnify Fluor because: 1) the Policy unambiguously excludes coverage for all of Grand Acadian's claims, and 2) none of the allegations in the Grand Acadian lawsuit give rise to an "occurrence" that would trigger coverage pursuant to the Policy.

### A.) Whether an "occurrence" has triggered coverage under United National's policy?

8

The Policy only covers "property damage" that is caused by an "occurrence."[22] The Policy defines "property damage" as: "(a) Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or (b) Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it."[23] The Policy defines occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."[24]

United National maintains that the Policy excludes coverage because Grand Acadian's allegations do not constitute an "occurrence." Grand Acadian alleges that Fluor and Honore failed to take the steps required by the contract, such as failure to follow the engineering plans, retaining qualified management, or performing soil testing, which are intentional rather than accidental acts, and are therefore not occurrences. *See, e.g., Hartford Cas. Co. v. Cruse*, 938 F.2d 601, 604-05 (5th Cir. 1991). United National thus argues that Grand Acadian's claims are essentially claims for breach of contract, which are not "occurrences" and are therefore excluded from coverage.

Fluor and Honore argue that Grand Acadian alleges more than just improper workmanship, and that Grand Acadian alleges property damage, which is covered as an "occurrence." Relying upon *Iberia Parish School Board v. Sandifer & Son Construction Company, Inc.*, Honore argues that many Louisiana courts have held that property damages arising from construction defects constitute an occurrence. 98-0319 (La. App. 3 Cir. 10/28/98); 721 So.2d 1021, 1023-34 (quoting 1 William S.

---

[22] Policy §I ¶1b(1) & (2).

[23] *Id.* § V ¶ 15.

[24] *Id.* §V ¶12.

9

McKenzie and H. Alston Johnson III, *Insurance Law and Practice* § 183, p. 370, in 15 Louisiana

Civil Law Treatise (1996)):

> Whether there has been an occurrence, however, depends upon
> whether there has been an accident, not upon the legal cause or
> consequence of that accident. Defective workmanship or the
> incorporation of defective materials is an "accident" under the
> *Kendrick* analysis. With construction defects, the real issue usually is
> not whether there has been an "occurrence," but whether there has
> been property damage during the policy period and, if so, whether the
> "work" exclusion is applicable. If the roof leaks or the wall collapses,
> the resulting property damage triggers coverage under an
> "occurrence" basis policy, even if the sole cause is improper
> construction and the only damage is to the work performed by the
> contractor. Whether coverage for such an "occurrence" is excluded
> by the work, product or other exclusion is a separate, very important
> inquiry.... On the other hand, the mere existence of a construction
> defect does not trigger coverage under an "occurrence" basis policy;
> coverage is triggered only if the defect causes property damage during
> the policy term.

Thus, Fluor and Honore maintain that the petition alleges damages that satisfy the definition

of an occurrence because the allegations state that the work performed by the defendants resulted in

erosion and a lowered property base, which is property damage that was unexpected.  Fluor also

rejects United National's assertion that Fluor's actions were intentional because the Fifth Circuit has

held that an occurrence happens where the resulting injury was unexpected, even if the

policyholder's acts were intentional. *Hartford*, 938 F.2d at 604-05.

In *Hartford*, the Fifth Circuit noted that "a comprehensive general liability policy does not

cover the cost of doing business," but "the requisite accident may inhere in the scope of damages."

*Id.* at 605. Further, "[w]hile liability policies are not performance bonds, 'defective workmanship

or the incorporation of defective materials' are considered 'accidents' and, thus, 'occurrences,' when

10

they result in related property damage." *Markel Am. Ins. Co. v. Schubert's Marine E., Inc.*, 04-376, 2007 WL 54808, *3 (E.D. La. 01/05/2007). The *Markel* court addressed an occurrence clause that is identical to the occurrence clause in this Policy. *Id.* Further, the court found that an occurrence triggered coverage where the subcontractor failed to dry the hull of a vessel, which caused wrinkles and warping of the vessel, rendering it a constructive total loss. *Id.* Although the subcontractor did perform defective work, the work in turn caused property damage that constituted an occurrence and triggered coverage. *Id.*

Similarly, Grand Acadian does not just allege that the defendants performed defective work, Grand Acadian also alleges significant property damage arising from construction defects, such as erosion and an unstable surface. Accordingly, based on applicable Fifth Circuit and Louisiana state jurisprudence, the four corners of the United National Policy, and the four corners of the petition, this Court finds an "occurrence"under the Policy.

### B.) Whether United National's Policy exclusions apply

United National argues that it has no duty to defend or indemnify Fluor or Honore because the alleged damages are excluded under the Policy. Specifically, United National argues that Exclusions 2(j)(5), 2(j)(6), and 2(m) all apply to bar coverage.

#### 1.) Exclusions 2(j)(5) and (6)

United National argues that Fluor's claims are excluded by 2(j)(5) and (6). The relevant policy provisions state:

> 2. Exclusions
>
> > This insurance does not apply to:
> >
> > J. "Property damage" to

11

(5)     That particular part of real property on which
        you or any contractors or subcontractors
        working directly or indirectly on your behalf
        are performing operations. If the "property
        damage" arises out of these operations; or
(6)     That particular part of any property that must
        be restored, repaired, or replaced because
        "your work"[25] was incorrectly performed on
        it.[26]

The Louisiana Supreme Court recently noted that "[e]xclusions (2)(j)(5) and (6) apply while the insured's work is in progress, i.e., the work is not yet complete." *Supreme Services & Specialty Co., Inc. v. Sonny Greer, Inc.*, 06-1827 (La. 05/22/2007); 958 So.2d 634, 641; *see also* 15 La. Civ. L. Treatise, *Insurance Law & Practice* § 198 (3d ed.) ("[e]xclusion (j)(5) applies while work is in progress...(j)(6) is applicable before the work is complete (as determined by the definition of the 'products-completed operations hazard'").

## A.) Exclusion j(5)

United National argues that exclusion (j)(5) bars coverage because the policy clearly excludes coverage of faulty workmanship performed by, or on behalf of, the contractor. Fluor argues that exclusion (j)(5) does not bar coverage because the property damage occurred after work was complete, and the exclusion only applies to damages occurring while the work is ongoing. Fluor argues that work was completed on January 30, 2006 when FEMA halted work and cancelled the project shortly after, on February 15, 2006.

---

[25] The Policy defines "your work" in the Definitions section as "Your work means: (a) work or operations performed by you or on your behalf; and (b) materials, parts or equipment furnished in connection with such work or operations." Policy, § V ¶19.

[26] Paragraph (j)(6) does not apply to "property damage" included in the "products-completed operations hazard."

12

On January 28, 2009, the Fifth Circuit rendered an opinion that considered the phrase "are performing operations" in (j)(5). *Mid-Continent Cas. Co. v. JHP Dev., Inc.*, — F.3d —, 2009 WL 189886, \*4 (5th Cir. 01/28/2009). Although the Fifth Circuit applied Texas law in *Mid-Continent*, this Court nevertheless finds the case instructive because Texas, like Louisiana, applies the "eight-corners rule" when determining whether the liability insurer has a duty to defend and indemnify, and because the language in (j)(5) of the policy considered in *Mid-Continent* is identical to (j)(5) of the Policy. *See id.*

Noting first that "the use of the present tense 'are performing operations' in exclusion(j)(5) makes clear that the exclusion only applies to property damage that occurred during the performance of construction operations," the Fifth Circuit then considered whether the contractor was "performing operations" when the damage, which was water intrusion, occurred. *Id.* The party seeking indemnification argued that the contractor was not "performing operations" because construction operations "had been suspended and were not actively occurring over the period of time during which the water intrusion occurred." *Id.* The liability insurer argued that the contractor was "performing operations" because the project had not yet been completed as four units were unfinished. *Id.*

Finding that the ordinary meaning of "performing operations" is "the active performance of work," the Fifth Circuit found that:

> [t]he prolonged, open-ended, and complete suspension of construction activities pending the purchase of condominium units does not fall within the ordinary meaning of 'performing operations.' This was not merely a brief, temporary halt, such as that which might occur at the conclusion of each workday or during several days if inclement weather, but rather a total cessation of active construction work for the foreseeable future.

13

*Id.*

Similarly, examining the four corners of the petition, Grand Acadian alleges that at least some of the property damage–such as the erosion–occurred after operations totally ceased in early 2006 when FEMA cancelled the contract. Accordingly, (j)(5) does not bar coverage.

### B.) Exclusion j(6)

United National argues that (j)(6) excludes Grand Acadian's claims for the cost of restoring, repairing and/or replacing the alleged damage to its property, because (j)(6) clearly excludes coverage to "[t]hat particular part of any property that must be restored, repaired, or replaced because 'your work' was incorrectly performed on it." United National further maintains that the products-completed operations hazard (hereinafter "PCOH") exception to exclusion (j)(6) does not apply because the work was never completed.

Fluor maintains that exclusion (j)(6), like exclusion (j)(5), does not apply because the work was not ongoing when the alleged property damage occurred. Fluor thus argues that because the work was not ongoing, (j)(6) does not exclude coverage. Furthermore, Fluor argues that the PCOH provides coverage. Fluor argues that FEMA's cancellation of the contract altered the work required by contract, and Fluor, Honore, and Group did not have the opportunity to finish the work as originally contemplated by contract. Fluor also argues that the PCOH was triggered because the project was "abandoned" after FEMA cancelled the contract.

There is an exception for exclusion (j)(6) for property damage in the PCOH.[27] 15 La. Civ. L. Treatise, *Insurance Law & Practice* § 195 (3d ed.). This exception provides:

---

[27] Policy, § V ¶ 14.

14

11.a. "Products-completed operations hazard" includes all bodily injury and property damage occurring away from premises you own or rent and arising out of "your product" or "your work" except:

> (1) Products that are still in your physical possession; or
>
> (2) Work that has not yet been completed or abandoned. However, 'your work' will be deemed completed at the earliest of the following times:
>
> > (A) When all of the work called for in your contract has been completed.
> >
> > (B) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.
> >
> > (C) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.[28]

At the outset, this Court concludes that, pursuant to the unambiguous policy terms, Fluor's work was not "completed." The first and second exceptions clearly do not apply because Fluor did not perform the work called for in the contract. The petition states that "FEMA entered into a specific contract with Fluor to develop a mobile home park on the FEMA-West-Half." Further, the third exception also does not apply because "part of the work done at a job site" was not "put to its intended use by any person or organization other than another contractor or subcontractor working on the same project." The purpose of the contract was to build a mobile home park, and the complaint states that the job site was left as a "mud hole" and remains in the same condition today. This conclusion is further supported by the Louisiana Fifth Circuit's consideration of whether work was "complete" in *Vintage Contracting*, finding that even though the concrete slab was completed,

---

[28] *Id.*

15

work was not "complete" because the project called for construction of an entire residence.[29] Although FEMA terminated the work, the work here was not completed because the work required was the construction of a mobile home park.

This Court does find, however, that the PCOH was triggered because the project was "abandoned." *See, e.g., Gottsegen v. Hart Prop. Mgmt., Inc.*, 02-129 (La. App. 5 Cir. 05/29/2002); 820 So.2d 1138, 1141–42. In *Gottsegen*, the court found that work on a pitched roof was "abandoned" when the contractors ceased working after the Parish halted the job because the proper permits were not obtained. *Id.* at 1139, 1142. Interpreting a PCOH clause nearly identical to the one in the Policy, the court concluded that the damage was covered under the PCOH because the work was abandoned and the damage occurred after the job was halted. *Id.* at 1142.

Similarly, this Court finds that the project was "abandoned" when FEMA halted operations. Because the project was abandoned, and at least some of the damage Grand Acadian alleges occurred after FEMA halted operations, this Court concludes that some of the damage is covered under the

---

[29] In *Vintage*, an individual contracted with Vintage to build a new home. *Vintage Contracting, LLC v. Dixie Building Material Co., Inc.*, 03-422 (La. App. 5 Cir. 09/16/2003); 858 So.2d 22, 24. Vintage then contracted with Dixie Building Material, Inc. to construct the concrete slab for the home. *Id.* The slab did not conform to contract specifications and had to be removed and replaced at a substantial cost to the individual. *Id.* at 25. Vintage made a claim against Dixie and also against Maryland Casualty for coverage under its GCL policy. *Id.*

The court considered whether the work product exclusion applied. *Id.* at 29-30. Specifically, the court considered whether the work was "complete" or whether part of the work was put to its intended use by someone other than another contractor or subcontractor working on the same project, as "complete" was defined in the policy, such that the work product exclusion would not apply. *Id.* at 30. The court rejected Dixie's argument that its work was complete because the slab was a separate part of the residence that was completed and put to its intended use when the damages were discovered, reasoning that the "work required" was the construction of the entire residence, and "completion of the slab does not amount to completion of the work called for in the construction contract." *Id.* at 30.

16

PCOH.

## C.) Exclusion 2(m)

Lastly, United National argues that the "impaired property" exclusion also bars coverage.

This provision excludes:

> "Property damage" to "impaired property"[30] or property that has not been physically injured, arising out of:
>
>> (1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work;" or
>> (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.
>
> This exclusion does not apply to loss of use of other property arising out of a sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.[31]

Specifically, United National argues that the impaired property exclusion bars coverage for

Grand Acadian's allegations of incidental damages to the Grand-East-Half, lost infrastructure and

improvements on the FEMA-West-Half, and loss of past and future income on the entire tract

---

[30] The Policy defines "impaired property" as:

> "tangible property, other than 'your product' or 'your work' that cannot be used or is less useful because:
>
>> (a) it incorporates 'your product' or 'your work' that is known or thought to be defective, deficient, inadequate or dangerous; or
>> (b) you have failed to fulfill the terms of a contract or agreement;
>
> if such property can be restored to use by:
>
>> (a) the repair, replacement, adjustment or removal of 'your product' or 'your work;' or
>> (b) your fulfilling the terms of the contract or agreement.

Policy, § V ¶7.

[31] *Id.* § I (2)(m).

because Grand Acadian seeks damages for "loss of use" of property that was not physically injured (in the case of the FEMA-East-Half). Fluor argues the impaired property exclusion does not bar coverage because Grand Acadian alleges physical damage to tangible property.

As explained in McKenzie & Johnson, 15 La. Civ. L. Treatise, *Insurance Law & Practice* § 197 (3d ed.), the impaired property exclusion is known as the "business risk" exclusion, and "the exclusion is not applicable when there is a loss of use due to physical injury to the tangible property." In *Stewart Interior Contractors, LLC v. Metalpro Indus., LLC*, Louisiana's Fourth Circuit noted that the impaired property exclusion, which is virtually identical to the one in United National's policy, was unambiguous. 07-0251; 969 So.2d 653, 664 (La. App. 4 Cir. 10/10/2007). Further, "[t]he exclusion precludes coverage for damage to property that has not been physically injured or for which only loss of use is sought," but does not apply "where there is physical damage to property other than the insured's work or product after the product has been put to its intended use." *Id.*

Although the impaired property exclusion bars coverage of some of Grand Acadian's allegations—*e.g.*, loss of loss of past and future income and incidental damages to the Grand-East-Half, the impaired property exclusion, however, does not unambiguously exclude coverage of Grand Acadian's claims pertaining to the FEMA-West-Half, because Grand Acadian alleges physical damage to property other than the insured's work or product. *See North Am. Treatment Systems, Inc. v. Scottsdale*, 05-0081; 943 So.2d 429, 445-46 (La. App. 1 Cir. 08/23/2006).

## II.) Fluor's Motion for Partial Summary Judgment

In its motion for partial summary judgment, Fluor argues that United National is obligated to defend it in the Grand Acadian lawsuit on two grounds: 1) The Policy names Fluor as an additional named insured and Fluor satisfies the requirements for defense arising out of property

18

damage, and 2) The Policy insures Honore's contractual obligation, assumed via the BOA, to pay Fluor's defense costs.

### A.) United National's Policy Provision Naming Fluor as an Additional Named Insured

Fluor argues that United National must defend it because Fluor is an additional named insured in the Policy, which insures Fluor "but only with respect to liability arising out of your ongoing operations performed for that insured."[32] Next, Fluor argues that the claims in the Grand Acadian lawsuit are covered, because the Policy covers "property damage" when caused by an "occurrence" within the "coverage territory" when it occurs within the "policy period."[33] "Coverage territory" includes the United States.[34]

Because the Policy does not unambiguously exclude the allegations in the Grand Acadian lawsuit, Fluor argues United National owes it a duty to defend. The lawsuit alleges that Fluor, Honore and/or Group's negligence caused Grand Acadian's property damage. As discussed *supra*, the suit alleges "property damage" that was caused by an "occurrence." Moreover, Fluor notes that the "occurrence" happened during the policy period, as work began on January 6, 2006 and the policy period was from January 5, 2006 to January 5, 2007. Lastly, Fluor argues that the occurrence happened within the coverage territory because it occurred in the United States.

### B.) United National's Contractual Liability Policy Provision

Fluor argues that Untied National is also obligated to defend Fluor based on the BOA between Fluor and Honore. The Policy provides that:

---

[32] *Id.* (Form B).

[33] *Id.* § I ¶ 1(b).

[34] *Id.* § V ¶ 4.

19

This insurance does not apply to:

**b. Contractual Liability**
'Bodily injury' or 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. **This exclusion does not apply to liability for damages:**

(2) Assumed in a contract or agreement that is an 'insured contract,' provided the 'bodily injury' or 'property damage' occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an 'insured contract', reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of 'bodily injury' or 'property damage', provided:

>    (a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract", and
>    (b) Such attorney fees and litigation expenses are for defense of that party against a civil or alterative dispute resolution proceeding in which damages to which this insurance applies are alleged.[35]

Fluor therefore argues that United National is obligated to pay Fluor's defense costs if: the BOA is an "insured contract," the property damage occurred after the execution of the BOA, Honore assumed the liability to pay Fluor's defense costs and indemnity in the BOA, Fluor incurred attorney's fees and litigation expenses by defending itself in a civil proceeding, and the petition alleges damages to which the Policy applies. Fluor further notes that United National did not argue in opposition that it does not owe a duty to defend Fluor based on this argument.

First, the BOA is an insured contract under the Policy[36] because Honore agreed to indemnify

---

[35] *Id.* § I ¶ 2(b).

[36] "Insured contract" is defined in the Policy as "[t]hat part of any other contract or agreement pertaining to your business ... under which you assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization."

20

Fluor in the BOA.[37] Second, Grand Acadian's alleged property damage occurred after the BOA was executed. Third, Honore agreed to pay Fluor's defense costs and indemnity in the BOA.[38] Fourth, Fluor is incurring attorney's fees and litigation expenses through its defense in the civil *Grand Acadian* lawsuit. Fifth, as discussed *supra*, the Grand Acadian complaint alleges damages that the Policy does not unambiguously exclude.

## CONCLUSION

Having examined the four corners of the Grand Acadian petition and the four corners of the Policy, this Court concludes that Grand Acadian's allegations give rise to an "occurrence" under the Policy. Furthermore, this Court finds that the Policy does not unambiguously exclude each of Grand Acadian's claims. Moreover, the Policy adds Grand Acadian as an additional named insured, such that United National's duty to defend is triggered; accordingly,

IT IS ORDERED that Fluor's motion for partial summary judgment [doc. 14] is hereby GRANTED, and United National has a duty to defend Fluor in the related *Grand Acadian* litigation;

IT IS FURTHER ORDERED that United National's motion for summary judgment [doc. 27] is hereby DENIED.

Lake Charles, Louisiana, this __27__ day of __April__, 2009.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

---

[37] Def.'s Ex. 3.

[38] Def.'s Ex. 3.

21